# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5536 | **DATE** | 2/9/2004 |
| **CASE TITLE** | Bonnie Jones, et al vs. Lewis Pratt, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on the *respondeat superior* and negligent supervision claims plaintiffs assert against Patrick and Associates Detective Agency in Counts V and VI of the amended complaint. Because the Agency is entitled to judgment as a matter of law on those claims, its motion for summary judgment is granted. Status hearing set for 3/3/04 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 11 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BONNIE JONES, as the parent and next )
friend of ZACHARY JONES, a minor, and )
JOSEPH PRESSLEY, )
 )
 )
Plaintiffs, )
 ) No. 01 C 5536
vs. ) Paul E. Plunkett, Senior Judge
 )
LEWIS PRATT, CHRISTOPHER BERG, )
THE CITY OF NORTH CHICAGO, and )
PATRICK AND ASSOCIATES )
DETECTIVE AGENCY, )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

In their amended complaint, plaintiffs allege that Patrick and Associates Detective Agency ("the Agency") is responsible under the doctrine of *respondeat superior* for the intentional torts of its employee Lewis Pratt (Count V) and for negligently supervising him (Count VI). The Agency has filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment on both claims. For the reasons set forth below, the motion is granted.

### Facts

On September 12, 2000, Lewis Pratt was employed by the Agency as a security guard at the Prairie View Apartments in North Chicago, Illinois. (Pls.' LR 56.1(b)(3)(A) Stmt., Ex. 1, Pratt Dep. at 11, 25, 31-32.) During his shift, Pratt had an altercation with plaintiff Pressley. (Id. at 32-36.)

Pratt notified the North Chicago Police Department about the incident and Pressley was arrested. (Id. at 35; Pls.' LR 56.1(b)(3)(A) Stmt. ¶ 1.)

A few hours later, while Pratt was still on duty, a North Chicago police officer called the Prairie View Apartments and asked Pratt to bring his report of the incident to the police station. (Id., Ex. 1, Pratt Dep. at 45-46) Pratt did as the officer requested. (Id. at 46.)

At this point the parties' stories diverge. Pratt says that he dropped his report off with an officer, but did not enter the booking room, the cell block or have any contact with Pressley or Jones at the station. (Id. at 46-47, 53, 55, 116.) Plaintiffs say that Pratt came into their cell, sprayed them with mace and beat them. (Id., Ex. 3, Pressley Dep. at 108-111.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

In Count V, plaintiffs seek to hold the Agency liable for Pratt's alleged actions under the doctrine of *respondeat superior*. "For an employer to be vicariously liable for an employee's torts under [that] doctrine . . . , the torts must have been committed within the scope of employment." Pyne v. Witmer, 543 N.E.2d 1304, 1308 (Ill. 1989). An employee's actions are within the scope of his employment if they: (1) are "'of the kind he is employed to perform'"; (2) "'occur[] substantially within the authorized time and space limits;'" and (3) are "'actuated, at least in part, by a purpose to serve the master.'" Id. (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1958)). The fact-specific nature of the scope of employment inquiry often makes it unsuitable for resolution on summary judgment. Id. (stating that summary judgment is only proper when "[n]o reasonable person could conclude from the evidence that an employee was acting within the scope of employment.") This case is one of the exceptions.

Viewed in the light most favorable to plaintiffs, the record shows that Pratt had an altercation with Pressley while Pratt was on duty at the Prairie View Apartments. (Pls.' LR 56.1(b)(3)(A) Stmt. ¶ 6.) Pressley was arrested, at a different location, by the North Chicago police, who subsequently asked Pratt to bring his report of the incident to the police station. (Id. ¶¶ 1, 7-8, 11.) Pratt went to the police station during his shift, and while he was there, entered the cell block, an area generally off-limits to civilians, and attacked plaintiffs. (Id. ¶¶ 16, 22; id., Ex. 3, Pressley Dep. at 108-111.)

Certainly, taking the incident report to the police station, which Pratt did during his regular shift and with the tacit approval of his employer, was an act within the scope of his employment. (See id., Ex. 2, Patrick Dep. at 51-52, 123-25 (stating that Agency employees are expected to cooperate with local law enforcement).) Just as clearly, however, Pratt's alleged attack on plaintiffs

3

was not within the scope of his employment. There is no dispute that Pratt was not directed by his employer to attack plaintiffs or even to enter the cell block. (Id. ¶¶ 33-34.) There is no evidence that Pratt entered the cell block at the request of the North Chicago Police to identify Pressley or to assist in some other way with their investigation of the incident at the Prairie View Apartments. (Id., Ex. 1, Pratt Dep. at 116 (stating that the North Chicago Police did not ask him to identify Pressley or sign a complaint against him).) In fact, the evidence shows that Pratt's presence in the cell block violated the rules of the North Chicago Police Department. (Id. ¶¶ 16, 22.) Moreover, though the attack occurred during Pratt's regular working hours, there is no evidence to suggest that his unprovoked beating of a suspect who was already in police custody for his conduct at the Prairie View Apartments, and a juvenile detainee unknown to Pratt, served the business purposes of his employer in any way. On the contrary, the only reasonable inference from the undisputed facts is that Pratt's alleged conduct – his unauthorized entry into the cell block and his unprovoked beating of defenseless individuals committed to the custody of the police – could only damage the cooperative working relationship the Agency sought to build with the North Chicago Police Department.

Plaintiffs argue that because Pratt's trip to the police station was, at least implicitly, sanctioned by the Agency, everything he did there fell within the scope of his employment. The Court disagrees. There is no evidence that the Agency authorized Pratt to drop by the police station at anytime for any reason. Rather, the evidence suggests that he was authorized to go to the police station to render assistance, if requested do so. Thus, the conduct he was authorized to perform was not visiting the police station, but taking his report to the police; a task, the parties agree, that did not require Pratt to enter the cell block. (Id. ¶¶ 16-17.)

The utter lack of job-related purpose to Pratt's presence in the cell block distinguishes this case from those cited by plaintiffs. In Davila v. Yellow Cab Co., 776 N.E.2d 720 (Ill. App. Ct. 2002), for example, a cab company was sued under the doctrine of *respondeat superior* for injuries sustained by a police officer whom a cab driver intentionally hit with his cab. The trial court granted summary judgment for the cab company, reasoning that the cab driver's conviction for battery, an intentional tort, established that he was not acting within the scope of his employment. Id. at 722. The Illinois appellate court reversed, saying that the scope of employment issue depended on the factors enumerated in Pyne, not on the distinction between accidental and intentional conduct. Id. at 727. Because the evidence showed that the cab driver was transporting a passenger – the kind of act he was employed to perform – at the time of the battery, the appellate court said the police officer was entitled to a trial on the *respondeat superior* claim. Id. at 729-30.

A similar result was reached in Bonnem v. Harrison, 150 N.E.2d 383 (Ill. App. Ct. 1958). In that case, Rodgers, an employee of a gas station, was sent to an auto dealership to purchase a part for a car. Id. at 384. Immediately after he arrived, an employee of the dealership insisted that Rodgers move his car. Id. at 384-85. Rodgers did so and, when he entered the dealership to make the purchase he had been sent to make, told plaintiff that he should treat customers more courteously. Id. at 385. Plaintiff responded with a racial slur, which provoked Rodgers into hitting him with a broom. Id. Because the evidence suggested that the incident erupted while Rodgers was attempting to complete his assigned task, purchasing the part, the court said that the *respondeat superior* claim had to be tried. Id. at 386-87.

In Bonnem and Davila, unlike this case, there was evidence to suggest that the tortious conduct arose during foreseeable altercations that occurred while the employees were performing

job-related tasks. The cab driver in Davila struck a police officer, who was directing traffic, while transporting a passenger in his cab. Likewise, the gas station employee in Bonnem struck a rude dealership employee from whom he was attempting to purchase a part. The same would be true for Pratt if he had attacked a suspect in the course of apprehending or interrogating him or had an altercation with a police officer, suspect or member of the public when he attempted to drop off his report. But that is not what the evidence shows. Rather, it shows that Pratt completed his job-related business without incident, and then somehow gained access to a restricted area of the police station,[1] where he mounted an unprovoked attack on two prisoners, one a juvenile he had never met. Because there is no evidence to suggest that Pratt's alleged conduct in the cell block was in furtherance of the Agency's business, or even a foreseeable consequence of the conduct of that business, the Agency is entitled to judgment as a matter of law on the *respondeat superior* claim plaintiffs assert against it. See RESTATEMENT (SECOND) OF AGENCY § 229 cmt. b (1958) ("An act may be incidental to an authorized act, although considered separately it is an entirely different kind of an act. To be incidental, however, it must be one which is subordinate to or pertinent to an act which the servant is employed to perform. It must be within the ultimate objective of the principal and an act which it is not unlikely that such a servant might do.").

The Agency also says that Count VI, a claim for its negligent supervision of Pratt, must be dismissed. To prevail on that claim, plaintiffs must offer some evidence that "the [Agency] knew or should have known that [Pratt] had a particular unfitness for his position so as to create a danger of harm to third persons and that the [Agency's] failure to safeguard the plaintiff against this

---

[1] Plaintiffs say that defendant Berg, a North Chicago police officer, let Pratt into the cell block, but they have offered no evidence to support that theory.

particular unfitness proximately caused the plaintiff's injury." Platson v. NSM, America, Inc., 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001). Plaintiffs have offered no such evidence. On the contrary, they admit that, before he was hired by the Agency, Pratt was honorably discharged from the United States Navy, worked in the private sector without incident, had obtained a security officer's license from the Illinois Department of Professional Regulation, completed the twenty-hour security officer training course required by the State of Illinois and was authorized to carry a gun. (Pls.' LR 56.1(b)(3)(A) Stmt. ¶¶ 25, 27, 30-32, 35, 37, 46, 52.) Moreover, plaintiffs admit that, until this incident, Pratt had never been accused of assaulting or battering anyone during his tenure as a security officer. (Id. ¶¶ 36, 39.)

Plaintiffs do not offer any evidence to counter these damning admissions. Instead, they attempt to salvage their claim by delaying its adjudication. According to plaintiffs, "discovery relating to Defendant's failure to properly supervise Pratt is ongoing" and, until it closes, "defendant's motion is premature." (Pls.' Mem. Opp'n Mot. Summ. J. at 13.) Plaintiffs are mistaken. On October 22, 2003, plaintiffs sought and received an extension of discovery until December 13, 2003. (See 10/29/03 Min. Order.) No further extensions have been sought or granted. Accordingly, discovery is now closed and Count VI is ripe for adjudication. Because plaintiffs have not offered any evidence to suggest that Pratt was unfit for a security officer position and the Agency knew it, the Agency is entitled to judgment as a matter of law on the negligent supervision claim asserted against it.

## Conclusion

For all of the reasons stated above, there is no genuine issue of material fact on the *respondeat superior* and negligent supervision claims plaintiffs assert against Patrick and Associates Detective Agency in Counts V and VI of the amended complaint. Because the Agency is entitled to judgment as a matter of law on those claims, its motion for summary judgment is granted.

ENTER:

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: 2-9-04